## UNITED STATES v. NEWTON TEA & SPICE CO.

(District Court, S. D. Ohio, W. D.    January 21, 1920.)

No. 1736.

1. **Food ⊚⇒15—False statements in circulars in package not violation of Food and Drugs Act.**

   False representations in circulars inclosed within package cannot be considered as violations of Food and Drugs Act June 30, 1906 (Comp. St. §§ 8717–8728), relating to misbranding.

2. **Food ⊚⇒20(1)—Information as to false representation in label held sufficient.**

   An information, alleging that statements of label were false and misleading, in that they represented to the purchaser that the article was a substitute for eggs and could be used in place of eggs for cooking and baking, whereas, in truth, said article was not then and there a substitute for eggs, and could not be used in place of eggs for baking and cooking, was sufficient, under Food and Drugs Act June 30, 1906 (Comp. St. §§ 8717–8728), as against an objection that it did not set forth why or in what manner the article could not be used as a substitute for eggs.

3. **Food ⊚⇒15—Proviso in Food and Drugs Act held not to furnish refuge for false representation as to nature of contents of package.**

   The proviso of the fourth subsection of section 8 of the Food and Drugs Act of June 30, 1906 (Comp. St. § 8724), providing that an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded in certain cases, goes only to the branding or name of the article, and does not furnish a refuge for one who has on the label otherwise falsely stated the nature of the contents of the package.

4. **Food ⊚⇒15—Statement on label that article was substitute for eggs not one of opinion.**

   Statement on label of package, "Substitute for eggs in baking and cooking," was not one of opinion only, but one of fact, and, where false, constituted a violation of Food and Drugs Act June 30, 1906 (Comp. St. §§ 8717–8728); it being otherwise expressed upon the label that the article could be otherwise used in place of eggs "in baking and cooking."

5. **Food ⊚⇒15—Representations as to result to be obtained held to constitute misbranding of food.**

   False representation as to results which may be obtained by the use of an article may constitute misbranding under Food and Drugs Act June 30, 1906 (Comp. St. §§ 8717–8728).

6. **Indictment and information ⊚⇒52(1)—Information need not be upon oath where defendant voluntarily appears.**

   An information not upon oath is not violative of the Fourth Amendment to the Constitution, where defendant has voluntarily appeared and filed motion to quash, it being only required that information shall be supported by oath before warrant may be issued thereon.

Prosecution against the Newton Tea & Spice Company under the Food and Drugs Act of June 30, 1906. On motion to quash information. Motion overruled.

James R. Clark, U. S. Atty., and Allen C. Roudebush, Asst. U. S. Atty., both of Cincinnati, Ohio.

McCauley & Simmonds, of Cincinnati, Ohio, for defendant.

PECK, District Judge. On motion to quash the information. The defendant, upon the filing of the information, voluntarily appeared

thereto, and moved to quash the same, upon the grounds: First, that the information is indefinite and does not apprise the defendant of the facts constituting the alleged crime with such certainty and particularity as to enable the defendant to know what it has to meet; second, the information attempts to charge the defendant with the commission of a crime by way of argument and conclusion; and, third, the court has no jurisdiction.

[1, 2] First. The information is brought under the Food and Drugs Act of Congress, June 30, 1906 (34 Stat. at Large, 768 [Comp. St. §§ 8717–8728]), and charges the defendant with shipping in interstate commerce 50 cases of an article designed for food, known as "Newton's Eggno," which the information alleges was labeled to read:

"An excellent substitute for eggs * * * to be used for baking and cooking purposes * * * an article of real merit and far superior to the usual egg substitutes on the market, * * * composed of pure materials * * * one even teaspoonful to be used in place of each egg called for in recipes requiring eggs"

—with directions for using and place of manufacture. A poster and circular are alleged to have been inclosed within the package, making like representations; but the contents of these, even if false, cannot be considered as violations of the act. United States v. American Druggists Syndicate (C. C.) 186 Fed. 387. The information further alleges that the aforesaid statements of the label were false and misleading, in that they represented to the purchasers that the article was a substitute for eggs, and could be used in place of eggs for cooking and baking, whereas, in truth, said article was not then and there a substitute for eggs, nor could the same be used in place of eggs for baking and cooking. The defendant contends that the information is deficient, in that it does not set forth why, or in what manner, the article cannot be used as a substitute for eggs in baking and cooking. The statements of the label above set forth were evidently designed to lead the ordinary housewife to believe that the contents of the package could be used in substitution for eggs in the ordinary preparation of food. The information expressly negatives the usefulness of the article for that purpose. It would seem, therefore, to be entirely sufficient to draw the issue upon that question, and, therefore, the motion in this respect is not well taken. This disposes of the first and second grounds assigned.

[3] Third. Defendant contends that the court has no jurisdiction over the subject-matter, for the reason that the information does not state an offense within the terms of the act. In support of this contention it is argued that the article comes within the proviso of the fourth subsection of section 8 of the act, by which it is provided that an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded in case, first, of mixtures or compounds which may now, or from time to time hereafter, be known as articles of food under their own distinctive names, and not in imitation of, or offered for sale under, the distinctive name of another article if the name be accompanied on the label or

brand with a statement of the place where said article has been manufactured or produced; and, second, in the case of articles labeled, branded, or tagged so as to plainly indicate that they are compounds, imitations, or blends. Even though we assume it to be the duty of the pleader under this act to negative the terms of the proviso, or assume that the article in question is shown by the label to be a mixture or compound known as an article of food under its own distinctive name, not alleged to be in imitation of another, nevertheless the protection afforded by this proviso goes only to the branding or name of the article, and does not furnish a refuge for one who has on the label otherwise falsely stated the nature of the contents of the package. It is not against the use of the name of "Eggno" that the information is directed, but against the statement that the contents are useful and fit to be substituted for eggs in ordinary cooking recipes.

In United States v. 150 Cases of Fruit Puddine (D. C.) 211 Fed. 360, having the subject under consideration, at page 364 the court says:

"It does not seem to me that the proviso in question was intended to except them absolutely from the provisions of the act, and to leave the manufacturers free to make misrepresentations concerning them. Such a construction is out of harmony with all the rest of the statute, and disregards one of the principal purposes of it. It seems to me that the protection afforded by the proviso is limited to the distinctive name; and, as so limited, I have no doubt that the proviso applies to the first paragraph of section 8, and fully protects distinctive names from being misbranding."

It was there accordingly held that the words "Fruit Puddine," being false and misleading with reference to the product known as "Puddine," constituted misbranding within the statute.

[4] It is further contended that the statement "substitute for eggs in baking and cooking" is not one of fact, but of opinion only, and therefore not, in law, misleading; that the substitution of one thing for another is largely a matter of judgment, and that to call a thing a substitute is not to affirm that it is even similar to the original; that one article of diet may be a substitute for another without any necessary similarity. In this case, however, the defendant chose its own definition for the term "substitute" when it expressed upon the label that the article could be used in place of eggs "in baking and cooking." Nothing else could be inferred but that in ordinary culinary compounds the article in question would produce the same or similar results as the use of eggs. This is a direct affirmance of a fact and a definite description, so far as obtainable results are concerned, of the article sold.

[5] It is further contended that the mere representation as to the results which may be obtained by the use of an article do not constitute misbranding under the act, and reliance is had upon United States v. Johnson, 221 U. S. 448, 31 Sup. Ct. 627, 55 L. Ed. 823, where it was held that the curative effect of a medicinal preparation of which the labels stated that the contents were effective in curing cancer, contrary to the fact, was not an offense against the provisions of the act relating to the sale of drugs, as the act then stood. But the terms of the act at that time were very much narrower in scope with regard to drugs than with regard to food. By the amendment of 1912

(Comp. St. §§ 8907a, 8733, 8907b, 8736, 9737) the prohibition relating to the misbranding of drugs was made to expressly cover any statement regarding the curative effect of the article, and under that amendment it has been held that statements of curative effect in reckless and wanton disregard of their truth come within the act. Simpson v. United States, 241 Fed. 841, 154 C. C. A. 543. With regard to food, the act makes it an offense if the package containing it, or its label, shall bear any statement, design, or device regarding the ingredients or substances contained therein, which statement, design, or device shall be false and misleading in any particular; and the allegations of the information would seem clearly to bring the statements in question within that category.

[6] The information is not upon oath, and it is contended that the same is therefore violative of the Fourth Amendment, and for that reason the defendant should not be held to answer. But the information is not required to be upon oath; it is only required that the same shall be supported by oath before warrant may be issued thereon. Weeks v. United States, 216 Fed. 292, 132 C. C. A. 436, L. R. A. 1915B, 651, Ann. Cas. 1917C, 524. As the defendant has voluntarily appeared and filed the motion now under consideration, no question concerning the validity of a warrant is here.

Motion overruled.